UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARINA BONDARENKO,<br><br>Defendant. | CASE NO. CR18-294 RSM<br><br>ORDER GRANTING DEFENDANT'S MOTION IN PART |

## I.  INTRODUCTION

This matter is before the Court on Defendant's motion seeking "an order converting her sentence to home confinement due to the escalating COVID-19 pandemic" or an order extending Defendant's self-surrender date to no earlier than August 1, 2021. Dkt. #88 at 1. The government opposes the motion on all grounds. Dkt. #93. Having considered the matter, the Court grants the motion in part.

## II.  BACKGROUND

Defendant Marina Bondarenko previously entered a plea of guilty to one count of bankruptcy fraud and, on February 13, 2020, Defendant was sentenced to 38 months in custody. Dkt. #59. Defendant was originally given a self-surrender date of March 25, 2020 at FCI Coleman Low Satellite Camp ("FCI Coleman"), in Florida. However, at Defendant's request,

ORDER – 1

1  the Court continued her self-surrender date to at least June 8, 2020, so that her son could finish
2  school and she could assist him in the transition to his new living situation. Dkt. #61. Of course,
3  COVID-19 hit and, in light of the pandemic, the Court again extended Defendant's self-surrender
4  date through September 1, 2020. Dkt. #75. In July 2020, more than 130 inmates had active cases
5  of COVID-19 at FCI Coleman, and the Court again granted an extension, pushing Defendant's
6  self-surrender date to no sooner than October 31, 2020. Dkt. #82. Only recently, Defendant was
7  given a January 19, 2021, self-surrender date. Dkt. #99.

8  Since Defendant's last request for an extension of her self-surrender date, she indicates
9  that she has developed several "respiratory-related medical conditions." Dkt. #88 at 3.
10 Specifically, Defendant was found to have mild airway obstruction, diagnosed with asthma, and
11 prescribed an inhaler on August 5, 2020. Dkt. #87 at 22–23. At the beginning of September, she
12 was seen by a pulmonologist, complained of shortness of breath, and was referred for a CT scan
13 of her chest. *Id.* at 3–5. On September 21, 2020, Defendant was again seen for a review of her
14 CT scan and continued to complain of shortness of breath, chest tightness, and occasional cough.
15 *Id.* at 6. However, the CT scan did not appear to indicate a need for immediate action and her
16 condition continued to be monitored. *Id.* at 6–11. By December, Defendant's shortness of breath
17 had resolved after mold was removed from her home—an allergist had previously told her that
18 she was allergic to mold—but she continued to suffer an "intermittent dry cough for several
19 months" and frequently needed to clear her throat. *Id.* at 12. As a result, Defendant's doctor
20 indicated that because "of the COVID-19 pandemic and her lung condition it is medically
21 necessary for her to stay home as much as possible for precautionary purposes." *Id.* at 2.

22 Because of her ongoing medical issues, Defendant made a request for compassionate
23 relief to the Warden of FCI Coleman on October 9, 2020. Dkt. #88-1 at 2–7. Defendant did not
24 receive a response before filing the current motion on December 10, 2020.

ORDER – 2

### III.       DISCUSSION

**A. Legal Standard**

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Congress expanded those limited circumstances in the First Step Act of 2018, now allowing prisoners to directly petition district courts for compassionate release after exhausting administrative remedies with BOP:

> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A) (italics reflecting First Step Act amendment).

The applicable, and referenced, Sentencing Commission policy statements specify that a district court should consider reduction of a sentence only where "[e]xtraordinary and compelling reasons warrant the reduction" and "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and should do so only "after

ORDER – 3

considering the factors set forth in 18 U.S.C. § 3553(a)." United States Sentencing Guidelines ("USSG") § 1B1.13. The Sentencing Commission's application notes indicate that extraordinary and compelling reasons may be based on the medical condition of the defendant, the age of the defendant, the family circumstances of the defendant, or, as a catch-all, for reasons other than a defendant's medical condition, age, or family circumstances. USSG 1B1.13 cmt. n.1. The contents of the policy statement provide persuasive guidance but do not constrain the Court's discretion in determining whether extraordinary and compelling circumstances justify compassionate release. *See United States v. Posey*, Case No. 18-cr-280-RSL, 2020 WL 4599879, at *4 (W.D. Wash. Aug. 11, 2020) (noting that the guidance of the policy statement is persuasive but not binding).[1]

"Compassionate release is 'rare' and 'extraordinary,' and courts routinely deny" relief. *United States v. Dana*, 467 F. Supp. 3d 962, 968 (D. Or. 2020) (citation omitted). The defendant bears the burden of establishing circumstances justifying compassionate release. *Riley v. United States*, Case No. 19-cv-1522JLR, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020).

**B. Compassionate Release Is Not Appropriate**

The starting point for considering Defendant's motion is whether Defendant is even permitted to seek compassionate release under 18 U.S.C. § 3582(c)(1)(A). The government argues that such relief is available only to a defendant who has already surrendered and is serving an in-custody sentence. Dkt. #93 at 4 (noting that a contrary reading would effectively provide

---

[1] *See also United States v. Peterson-Siler*, Case No. 15-cr-118-RAJ, 2020 WL 5106722, at *6 (W.D. Wash. Aug. 31, 2020) (policy statement provides helpful guidance, but does not constrain courts' discretion); *United States v. Wells*, Case No. 16-cr-07-RSM, 2020 WL 5118165, at *2 (W.D. Wash. Aug. 31, 2020) (concluding that the Court has discretion to consider factors outside of those listed in the policy statement); *United States v. Powers*, Case No. 15-cr-166-TSZ, 2020 WL 3605748, *2 (W.D. Wash. July 2, 2020) (noting additional factors courts have considered in the context of COVID-19-related compassionate release motions).

ORDER – 4

for resentencing). Central to consideration of the statutory language is whether Defendant can satisfy her obligation to exhaust administrative remedies where she is not under the direct custody of any warden. *See* 18 U.S.C. § 3582(c)(1)(A) (administrative remedies exhausted thirty days after submitting a request for release to the "warden of the defendant's facility").

Defendant contends that it is statutorily sufficient for a defendant to seek relief from the warden of the facility where the defendant is designated to surrender, as she did. Dkt. #88 at 8. For support, Defendant points to several cases where United States District Court Judges for the Northern District of Illinois appeared to reach similar conclusions. *Id.* (citing *United States v. Butler*, CR14-445, Dkt. 188 (N.D. Ill. April 30, 2020) and *United States v. Konopka*, CR17-616, Dkt. 117 (N.D. Ill. April 30, 2020)); Dkt. #95 at 2 (citing *United States v. Gonzalez*, No. CR18-0232-TOR-15, 2020 WL 1536155 at *1 (E.D. Wash. Mar. 31, 2020). But the government also has cases that appear to support its position that pre-surrender relief is not permitted. Dkt. #93 at 6 at (citing *United States v. Picardo*, 2020 WL 6501730, at *2 (D.N.J. Nov. 5, 2020); *United States v. Konny*, ___ F. Supp. 3d ___ , 2020 WL 2836783, at *2 (S.D.N.Y. May 30, 2020); *United States v. Spruill*, 2020 WL 2113621, at *3 (D. Conn. May 4, 2020)).

Ultimately, however, this is not a question that the Court needs to answer today. Even if Defendant can seek compassionate release, the Court would not exercise its discretion to order compassionate release in this circumstance. *See United States v. Dvorak*, 830 F. App'x 846, 847 n.1 (9th Cir. 2020) (accepting that abuse of discretion standard applies to review of a denial of sentence reduction under 18 U.S.C. § 3582(c)(1)(A)) (citing *United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013)); *United States v. Burgos-Valencia*, No. CR-05-00125-001-TUC-DCB (BPV), 2020 WL 7495442, at *1 (D. Ariz. Dec. 21, 2020) ("Compassionate release is a rare and extraordinary remedy, within a district court's discretion to deny.") (citing *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020)).

ORDER – 5

Compassionate release requires that the defendant establish an extraordinary and compelling justification for such relief and Defendant has not done so here. At most, Defendant establishes that she suffers from mild asthma and that she *may* suffer from an undiagnosed medical condition. Asthma *might* place individuals at higher risk from COVID-19, but only when the asthma is diagnosed as moderate-to-severe. *See* UNITED STATES CENTERS FOR DISEASE CONTROL AND PREVENTION, *COVID-19*, *People at Increased Risk*, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 11, 2021) (emphasis in original); *See also* Dkt. #93 at 11–12. Defendant's mild asthma does not place her at heightened risk of harm from COVID-19 and she does not present any evidence that it does. Defendant likewise fails to establish that she presently suffers from any condition that places her at heightened risk from COVID-19.

Defendant relies on the declaration of Dr. Lawrence Ho, a doctor of pulmonology, but the Court finds it speculative and is unpersuaded. Dr. Lawrence conducted a review of Defendant's recent medical records[2] and notes Defendant's "ongoing workup to evaluate a potential lung disease." Dkt. #89 at ¶ 5. While Dr. Ho does identify potential indicators of pulmonary fibrosis—a lung disease—, he indicates that even such a diagnosis would only have the *potential* to place Defendant "at an increased risk for severe illness from the virus that causes COVID-19." *Id.* Dr. Ho does not indicate that Defendant presently suffers from any condition that will place her at a greater risk of harm and indicates only that further workups may reveal conditions of concern. *Id.* at ¶¶ 6–8. Weakly, Dr. Ho concludes only that the Court should give "consideration" to Defendant's "ongoing disease work up and potential vulnerabilities." *Id.* at ¶ 8. Lastly, the Court also notes that some of the further evaluation Dr. Ho indicated was

---

[2] Defendant does not clarify the need for a medical opinion from a doctor other than Defendant's treating physicians. Regardless, Dr. Ho's impression does not appear to differ significantly.

ORDER – 6

necessary has already occurred and Defendant did not find it useful to update the Court on the result of those evaluations. *Id.* at ¶ 6–7 (noting scheduled follow up with physician in December and continued evaluation by rheumatologist); Dkt. #87 at 20 (noting Dec. 22, 2020 appointment with South Florida Rheumatology). The declaration is insufficient for Defendant to carry her burden.

At the end of the day, there is no certainty that Defendant suffers any medically significant condition or that any such medical condition places her at any greater risk from COVID-19. Defendant may well be diagnosed with a medical condition before or during her in-custody sentence—just like any other inmate. Should that occur, it may be appropriate to consider whether Defendant qualifies for compassionate release at that time. But on this record, the Court does not find any extraordinary or compelling justification for compassionate release and therefore does not consider the issue further.

**C. Defendant's Self-Surrender Date Is Appropriately Delayed**

Even though Defendant is not presently suffering from an identified medical condition, the Court concludes that it would be unwise to add additional prisoners to a prison system currently battling the spread of COVID-19. As Defendant notes, there have been recent cases of active COVID-19 infections among inmates and staff at FCI Coleman. Dkt. #88 at 12 (indicating 23 inmates with active COVID-19 cases as of December 10, 2020). At present, one inmate and 24 staff have active cases of COVID-19 at FCI Coleman. BUREAU OF PRISONS, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Jan. 11, 2021). A primary way to combat the spread of COVID-19 within custodial settings has been to reduce the in-custody population. *See* Memorandum from the Attorney General to the Director of Bureau Prisons (March 26, 2020), *available at* https://www.justice.gov/file/1262731/download (U.S. Attorney General advising Director of BOP to reduce populations by transferring non-violent, vulnerable, and elderly

ORDER – 7

inmates to home confinement). As wardens juggle their populations to promote social distancing among inmates while also protecting the safety of the public, it makes little sense for the Court to add additional non-violent convicts to the burdened prison system.[3]

Defendant was not convicted of a violent offense, does not have prior criminal history, and has not had issues while supervised by probation and pretrial services. Unquestionably, Defendant should be forced to serve her criminal sentence. However, further delay will not eliminate the punitive impact of Defendant's sentence and does not appear to impact the physical safety of any person or the public. A short delay is further supported by the country's progress with the vaccination effort, offering hope that custodial populations and prison staff will soon be offered vaccination, greatly mitigating the significant threat of COVID-19 in custodial settings.

Defendant, without giving any justification, has requested that the Court extend her self-surrender date to no earlier than August 1, 2021.[4] Dkt. #88 at 15. The government contends that an extension to March 1, 2021, is much more reasonable. Dkt. #93 at 14. The Court agrees that there is no justification for the lengthy extension requested by Defendant. Accordingly, the Court will delay Defendant's self-surrender date only through April 1, 2021.

//

//

---

[3] The Court notes, also, that this point supports the government's position that compassionate release is not available to convicts that have not begun serving their in-custody sentences. Allowing pre-surrender convicts to seek compassionate release would task multiple judges across the country with determining which inmates are most appropriately housed in a specific prison facility. But each individual judge lacks knowledge of the total population at, or moving to, that facility. The more reasoned approach is for the warden of the facility to consider the population under his custody so that he may consider the health and safety of his charges and may determine which inmates are most appropriately considered for release.

[4] Defendant's reply appears to make clear that this date lacks any logical basis and is rather an unsupported guess of when the pandemic will be quelled. Dkt. #95 at 8.

ORDER – 8

## IV.    CONCLUSION

Accordingly, having reviewed Defendant's motion, supporting documents, relevant briefing, and the remainder of the record, the Court hereby finds and ORDERS that Defendant Marina Bondarenko's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or For Alternative Relief (Dkt. #88) is GRANTED IN PART.  To the extent Defendant's motion seeks compassionate release and conversion of her in-custody sentence to home confinement, the motion is DENIED.  To the extent Defendant's motion seeks to delay her self-surrender date, the motion is GRANTED IN PART.  The Federal Bureau of Prisons is hereby directed to issue a new reporting date on or after April 1, 2021.

Dated this 12th day of January, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE